(Decided 24th July, 1878.)

---

James Armstrong, and others, trading as Armstrong
& Co. *vs.* Harry F. Turner.

*No recovery for work and labor done can be had under count
for Goods bargained and sold—Request of vendee to vendor
to retain possession of goods ready for delivery equivalent to
bailment.*

In an action to recover the price of goods bargained and sold where the de-
claration does not contain a count for work and labor done, no recovery
can be had for work and labor done to the articles bargained and sold under
the count for goods bargained and sold.

Where goods bargained and sold are prepared for delivery according to the contract, but before actual delivery the vendor is requested by the vendee to hold possession of said goods until further orders, such preparation for delivery and request for detention constitutes constructive acceptance and delivery, and constitutes the vendor the bailee of the vendee, and recovery may be had for such goods under a count for goods bargained and sold.

APPEAL from the Court of Common Pleas.

The appellants sued the appellee *for goods bargained and sold* by the appellants to the Baltimore Chandelier Manufacturing Company, in which the appellee was a stockholder. A bill of particulars was filed specifying the dates and character of each charge, the dates extending from October 18th, 1875, to February 28th, 1876, and among the charges were some *for work and labor done* in the preparation of the goods sold to said company. The appellants sued for $564.46, *for goods bargained and sold*, the appellee pleaded the general issue, and judgment after trial was entered for the appellants for $239.00.

*Plaintiffs' First Exception.*—The goods sold by the plaintiffs to the said Chandelier Company, were castings and materials necessary for the manufacture of chandeliers, and the plaintiffs offered to prove that when said castings were ordered by the agent of said company, they informed him that it would be necessary to make certain fallowboards and match plates, in order properly to prepare the goods ordered, that such agent agreed thereto, that in the absence of agreement to the contrary, the foundryman was by the custom of the trade entitled to make a separate and distinct charge for them, and that they became the property of the owner of the castings after said castings were made. The plaintiffs further offered to prove that the castings were duly shipped to the said company, except those for which the charge of $105.56 was made in the bill of particulars under date of February 26th, 1876; that these castings were prepared for shipment, but re-

tained at the request of the company until further orders. The plaintiff also offered in evidence the following letter from the agent of said company.

" BALTIMORE, *February* 21, 1876.
" Messrs. Armstrong & Co.,
" *Gents :*—Don't make any more castings until you see me, I want to make more alterations.
Respectfully,

S. ADAMS."

They further offered to prove that the castings retained by them at the request of the company as aforesaid had never been ordered to be shipped by said company, but were still in the possession of the plaintiffs. The bill of particulars contained a number of charges in the nature of work and labor done in the preparation of the goods ordered by said company. The defendant objected to all of the foregoing testimony which referred to the charges for fallow-boards and match plates, and the charges in the nature of work and labor done, in the bill of particulars, which objection the Court sustained, on the ground that said evidence was not admissible under the pleadings in the case.

*Plaintiffs' Second Exception.*—The evidence being closed on both sides, the plaintiffs offered the following prayers:

1. That if the jury find the fact of the certified copy, offered in evidence, of the articles incorporating the " Baltimore Chandelier Company, of Baltimore City ; " and further find that the goods named in the account or bill of particulars offered in evidence were ordered by the agents of said Chandelier Company, or sold and delivered by the said plaintiffs to the said Chandelier Company, at the rates and prices named and set forth in said account; and further find that the said defendant was a stockholder in said corporation to the extent of one hundred shares, of the par value of one hundred dollars per share, and that he has

paid in fifteen per cent. of the par value of said shares, and that he was such stockholder at the time when said goods were ordered, or sold and delivered as aforesaid, then the plaintiffs are entitled to a verdict for their said claim, with such interest as the jury may think proper to award.

2. If the jury find the facts in plaintiffs' first prayer, and further find from the evidence in the cause, that the agent and general superintendent of the said Baltimore Chandelier Manufacturing Company directed the plaintiffs not to ship any more castings to said company, and the plaintiffs did not consequently ship said castings, as they were directed not to do, but enclosed the item charged in plaintiffs' said bill of particulars, dated February 26th, 1876, and amounting $105.56, then it is competent for the jury to include the said charge of $105.56 in such verdict as they may find for the plaintiffs; provided the jury believe from the evidence, that the said Chandelier .Company waived the actual delivery of the castings named in the said charge of February 26th, 1876.

And the defendant offered four prayers, the first, second and third of which were as follows :

1. That if the jury shall find from the evidence, that the plaintiffs made a contract with the Baltimore Chandelier Company for the sale to said company of castings, at the rate of 6½ cents per pound, to be delivered on steamboat or cars at Port Deposit, then the plaintiffs can only recover in this action for such goods as were so delivered by them.

2. That in this action the plaintiffs can only recover for such goods as were actually or virtually delivered to the Baltimore Chandelier Company, and if they shall find that any of the goods charged for by the plaintiffs were not delivered, then the plaintiffs cannot recover for the price of such goods, notwithstanding that Sydney Adams wrote the plaintiffs the letter of February 21st, offered in evidence.

3. That there is no evidence of any delivery to the Baltimore Chandelier Company of castings, after February 21st, 1876, nor any evidence of any delivery of any of the items which follow the charge made as of that date on the plaintiffs' bill of particulars.

The Court refused to grant the plaintiffs' prayers, and granted the aforegoing prayers of the defendant, to which ruling of the Court the plaintiffs excepted, and the judgment in their favor being for less than one-half of the sum claimed, they took this appeal.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER, GRASON, ALVEY and ROBINSON, J.

*Alexander H. Hobbs,* for the appellants.

1. *The First Exception* is sustainable upon principle and authority. The "*fallow-boards* and *match plates*" spoken of by the witnesses, having been ordered by Sidney Adams, *the general superintendent and agent of the Chandelier Company,* to be made, they were accordingly manufactured by the appellants out of *their own materials,* and not from anything supplied by the said company. The *labor* and *materials* of the appellants thus employed formed in part the *subject of the count for goods bargained and sold,* and not *work* and *labor.* Had the *materials* from which the "fallow-boards and match plates" were made been supplied by said company, and the *mere manufacturing of them* been performed by the appellants, their claim for *compensation* would properly have been for "work and labor." But the appellants supplied *their own materials, and from which they manufactured* the articles or items charged as "fallow-boards" and "match plates" for the use and benefit of the said Chandelier Company, by the direction of the duly *authorized agent* of said company; and, therefore, their claim for compensation was correctly

made for goods "bargained and sold,'' or "sold and delivered."

The goods in this case named were manufactured and the materials were furnished by the appellants at the instance of and for the Chandelier Company; and the appellee "became and was concurrently liable with the company from the inception of the debt." *Norris vs. Wrenschall*, 34 *Md.*, 500. Every person dealing with such companies looks to the *personal liability* of the stockholders. *Ibid*, 501. The sale of goods, therefore, in this case was a sale "*inter partes*" between the original contracting parties, and *actual delivery* was not necessary to constitute a valid sale.

It was said by MARTIN, Justice, in *Gough vs. Edelen*, 5 *Gill*, 102, "It is a familiar principle, and was not controverted by the counsel for the appellee, (the vendor,) that there may be a perfectly valid transfer of personal property, both at common law and under the 17th section of the Statute of Frauds, without either an actual delivery of possession or a bill of sale; and we cannot understand the ground upon which this instruction was given by the Court to the jury, except on the supposition that they considered the case before them as embraced by the Act of Assembly of 1729, ch. 8," which the Court further said only applied to cases in which *creditors* were concerned. In the case in 5 *Gill*, there was not only no delivery, but the property alleged to have been sold *actually remained in the possession of the vendor*.

In the case of *Wade vs. Moffat*, 21 *Ill.*, 11, the *vendor retained possession* of the goods sold, but the title nevertheless passed. The action was *assumpsit;* declaration— for goods "bargained and sold."

In *Willis vs. Willis*, 6 *Dana*, 48, there was an exchange of negroes; and no delivery by either party was made. The property passed, however, and the vendor retaining *possession* of the thing sold was treated as a *bailee* of the purchaser.

2. There was a large amount of manufactured articles delivered prior to February 26th, 1876, corresponding with the articles sued for ; and on account of which articles so delivered the sum of $544.33 was paid. This, it is respectfully submitted, was *part* delivery under the contract, as shown by the witnesses.

" The acceptance of *part* of the goods bought makes the contract good for the whole, *even in cases where some of the goods are not in existence, but are to be manufactured.*" *Benjamin on Sales,* (2nd Am. Ed.,) sec. 167, *et seq. ; Thompson vs. B. & O. R. R. Co.,* 28 *Md.,* 404 ; *Gault vs. Brown,* 48 *N. H.,* 185 ; *Marsh vs. Hyde,* 3 *Gray,* 331 ; *McKnight vs. Dunlap,* 1 *Seldon,* 537 ; *Ross vs. Welsh,* 11 *Gray,* 335 ; *Waldron vs. Chase,* 37 *Me.,* 414.

As to the refusal of the buyer to accept or receive the remainder, *after* the delivery of a *part* of the manufactured goods, see *Benjamin on Sales, secs.* 760, 761, 763, *note (S,)* and *sec.* 767, and *note (c.)* It is asserted here that the buyer, having ordered the goods to be manufactured and accepted a *part* of them when manufactured, and thereafter directed that "*no more*" of the goods so ordered be delivered, with such instruction before the vendor it would be folly for him to deliver or attempt to deliver the goods which he had been notified, *in advance,* would not be received. This law, as stated by Benjamin, falls directly within the scope of the decision in *Dugan vs. Anderson,* 36 *Md ,* 567.

The order not to make further delivery is treated as a *continuing refusal to accept,* and the vendor is entitled to recover the *whole amount* of his claim, notwithstanding *all* of the goods contracted for were *not* delivered.

The vendor, in such cases, becomes the *bailee* of the purchaser.

Now it is insisted that the evidence contained in the appellants' *first* exception ought to have been admitted ; and the appellants' prayers should have been granted, as,

it is believed, they correctly annunciated the law of this case. The appellee's prayers are predicated on the notion that to perfect the sale of movable chattels, "*inter partes*," *actual delivery* is necessary, which, it is submitted, is not law.

In reference to the charge of $105.56, in the bill of particulars, under the date of February 26th, 1876, and the "fallow-boards" and "match plates," William Armstrong, one of the defendants, testified "that the castings for which this charge ($105.56) was made were placed in boxes, to be shipped as aforesaid, (that is, to the company at Baltimore,) when he (the said William Armstrong) was notified by said agent *not* to ship them until further ordered. (And see the letter of said agent, bearing date February 21st, 1876, and received by the witness.) This witness further testified that the appellants had never been ordered to ship said castings, (the $105.56 charge,) which, together with the said 'fallow-boards and match plates,' are still in plaintiffs' possession, subject to and awaiting the orders of said corporation."

It would be difficult to determine how goods sold could be more effectually "*separated*" and "*set apart*" than is shown to have been done in this present case; and it is universally held that such separation and setting apart is equivalent to actual delivery, and is, in law, equally efficacious. *Thompson vs. B. & O. R. R. Co.*, 28 *Md.*, 404, 405 *and* 406.

These goods now on hand are *exceptional,* and not in the ordinary course of trade and traffic in manufactured goods; are of use only to the manufacturer of chandeliers, and are, at present, *a total loss* to the appellants.

Should the Court, however, conclude that the plaintiffs' *pleadings are defective,* it is competent to order *procedendo,* to the end that proper amendments may be made. *Evans' Practice,* 570, 571 and 572, (*Ed.* 1867.)

*Frederick J. Brown*, for the appellee.

It is too plain for argument that the plaintiffs cannot recover under their declaration for their work expended in "finishing," "fitting," "soldering," &c.

The plaintiffs might, perhaps, have recovered by alleging and setting forth a special contract, and then showing their loss and damage incurred by reason of any breach of such contract, but could not recover in their action as brought.

The plaintiffs' *first* prayer was properly rejected, because under it the jury was instructed to find for the plaintiffs, if the goods named in the bill of particulars were ordered by the agents of the Chandelier Company, *or* sold and delivered, &c.

Their *second* prayer was properly rejected because there was not a particle of evidence of any *waiver* of actual delivery of the castings named.

A *waiver* of delivery, or a consent to take an imperfect delivery, instead of the delivery stipulated for, is quite a different thing from a refusal to accept at all.

Defendant's objection to the admission of all testimony on the subject of "fallow-boards and match plates" was, of course, intended to include *patterns*, all of those articles coming under exactly the same category, and it was so understood by the Court, which struck out all testimony referring to "all items of charges following the item of February 26th, 1876, 1624 pounds castings, as not being proper to be allowed under the pleadings in this case."

The plaintiffs could only recover for the castings actually sold and delivered according to the contract, and the jury found for them to this extent under the instructions of the Court, deducting from the amount of their bill only those items excluded from consideration by the Court.

When the agreement for sale is of a thing not specified, as of an article to be manufactured, or of a certain quantity of goods in general, without a specific identification of

them, * .* the contract is an executory agreement, and the property does not pass. *Benj. on Sales,* (*2nd Ed.,*) 257.

Where the contract is executory for the sale of articles not in existence, but to be manufactured, no property passes to the orderer until the thing is completely finished, and is either delivered to him, or is appropriated to his benefit, set apart for him, *and is accepted by him.* *Story on Sales, secs.* 233, 315.

Neither the manufacture of an article pursuant to the order of a customer; nor the tender of the article when manufactured ; nor the leaving it with the customer against his will, transfers the title in the article to the purchaser. To effect such a transfer there must be an acceptance of the article either express or implied. *Moody vs. Browne,* 34 *Me.,* 107.

In case of sale of articles to be manufactured, action for goods bargained and sold will not lie, unless there be a sale. There could not be any sale in this case unless there was an assent by the defendants to take the articles. Here there was no assent. The property must be changed to make the action maintainable. *Atkinson vs. Bell,* 8 *B. & C.,* 277.

In *Allen vs. Jarvis,* 20 *Conn.,* 50, *assumpsit* for work and labor done, and materials furnished, defendant, the patentee, ordered plaintiff to manufacture twenty patent surgical adjusters, and directed him to stop before they were completed.

The Court, citing *Atkinson vs. Bell,* held that the materials being those of the plaintiff, and the work and labor having been done on his own property, the proper remedy was an action on the case to recover damages suffered from the act of defendant in preventing the completion of the contract.

A count for goods bargained and sold can only be maintained where the property in the goods has passed from

the plaintiff to the defendant.    *    *    The plaintiff cannot sustain his action unless where the defendant is in a condition to recover the goods in trover, and must sustain the loss in case of their being stolen or destroyed by fire. TINDAL, C. J., in *Elliott vs. Pybus*, 10 *Bing.*, 512 ; and see an able discussion of the principle involved, and of the leading authorities, in *American Law Register, Vol. XV*, (1876,) *note, pp.* 160–164.

No case can be shown to sustain the position that under a contract for the purchase of articles to be manufactured, the place and mode of delivery being specified in the contract, the property in the articles could pass without either delivery, acceptance or waiver of delivery.

STEWART, J., delivered the opinion of the Court.

This action is against the appellee, as a stockholder in the Chandelier Manufacturing Company of Baltimore.

No question is made as to his liability as such, but the objection is to certain items in the account of the appellants as not properly recoverable under the pleadings in the case.

The declaration being for goods bargained and sold and no count for work and labor, the testimony must necessarily be confined to matters relevant to this issue, and there was no error in the ruling in the first exception.

The claim of $105.56 for certain castings ready to be shipped when the agent of the company countermanded the shipment, was a legitimate charge as for goods bargained and sold and properly recoverable under the issue.

There was evidence that their castings were placed in boxes ready for shipment at the time the agent gave notice not to ship them until further ordered.

This was constructive acceptance and delivery, and constituted the appellants the bailees thereof.

The appellants' first prayer was objectionable, referring to work and labor as well as goods bargained and sold

embraced in the account, and his second prayer, affected with the vice of the first, could not be granted, although the claim referred to therein of $105.56 was properly chargeable under the issue, as we have said.

The appellee's prayers were calculated to mislead the jury, and ought not to have been granted.

*Judgment reversed, and*
*new trial ordered.*

(Decided 24th July, 1878.)