| 77 | 55 |
| d117 | ¹473 |

Boyington and another, Appellants, vs. Sweeney, Respondent.

*May 1 — May 20, 1890.*

*Sale of chattels: Delivery: Who to furnish cars? Reasonable time: Delay: Destruction by fire: Counterclaim: Modification of contract: Evidence: Instructions to jury.*

1. In a contract for the sale of logs, which were to be cut and hauled to the railroad within a certain time, the vendor agreed to load them upon the cars as ordered by the vendees, and the title was to vest in the vendees as fast as they were loaded. There being no express provision on the subject, it is *held* that the cars were to be furnished by the vendees and within a reasonable time after the logs were ready to be loaded.

2. Whether a delay of more than two months in furnishing the cars was reasonable or not, was a question properly left to the jury.

3. If, after the vendees were notified that the logs were ready to be loaded, they neglected for an unreasonable time to furnish the cars, and thereafter the logs were destroyed by fire, the loss should fall upon them, and the vendor may recover the contract price of the logs destroyed, as though they had been delivered, less the cost of loading them upon the cars.

4. Such recovery may be had, in an action by the vendees for a failure to deliver the logs, upon a counterclaim setting forth the facts and claiming to recover as for a full performance of the contract.

5. If, after the logs were ready to be loaded, the vendees fully accepted them and, for a valuable consideration, agreed to relieve the vendor from the duty of loading them and to do the loading themselves, the subsequent destruction of the logs was their loss.

6. An instruction that if the jury believe a witness has not stated the truth they may reject his testimony, but that they should not reject it without reason or without due care, *held* not erroneous.

APPEAL from the Circuit Court for *Price* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The plaintiffs, *Boyington & Atwell*, brought this action against the respondent, *Sweeney*, to recover damages for the nonperformance of a contract of which the following is a copy, viz.:

"This agreement, made and entered into this 15th day of July, 1886, by and between *James Sweeney*, of Price county, Wisconsin, party of the first part, and *Boyington & Atwell*, of Price county, Wisconsin, party of the second part, witnesseth, that said party of the first part does sell to the party of the second part all pine logs cut and to be cut from all lands owned by said party of first part in section thirty (30), and section nineteen (19), township thirty-nine (39), range one (1) east. In consideration of which, said party of second part agrees to pay to said party of said first part, for all logs that will scale twelve inches at top end, and one half sound, the sum of five dollars and fifty cents per thousand feet, board measure, and for all

logs less than twelve inches at top end, and that will not scale one half sound, the sum of three dollars per thousand feet, board measure. Said party of first part agrees to log at least one million five hundred thousand feet of said logs this summer, and the balance during the spring of 1887, and furthermore agrees to load all logs on cars at Sweeney's side track of Wisconsin Central Railroad Company, as ordered by said party of second part, and to furnish crew enough to load forty cars and more if practicable per day, the logs to be scaled by a competent scaler to be agreed upon by both parties, and further agree that the title to said logs shall vest in the said second named party as fast as loaded on cars, and that said party of first part will forever warrant and defend the title to said logs in second named party free and clear of all incumbrances, payments to be made as follows: One thousand dollars cash, and note for one thousand dollars payable in sixty days without interest; balance of value of first two thirds, when demanded, about November 1st, 1886, of all logs scaled; the remaining one third to be paid January 10th, 1887.

" James Sweeney, [Seal.]

" Boyington & Atwell, [Seal.]

" B. H. Sunderland, Witness.

" G. J. Altrecht, Witness.

" As amendment to the foregoing contract, party of the first part agrees to load forty cars or more, if in his power.

" James Sweeney, [Seal.]

" Boyington & Atwell, [Seal.]

" B. H. Sunderland, Witness.

" G. J. Altrecht, Witness."

The plaintiffs allege several breaches of this contract on the part of the defendant: *First*, that the defendant refused to load 1,179,550 feet of said logs on the cars as he contracted to do, and that plaintiffs were compelled to and did pay the sum of $854.19 for loading the same; *second*,

that plaintiffs had advanced to the defendant on said contract, in money, merchandise, etc., $15,625.43, and $172 to pay the scaler, half of which should be paid by the defendant, making the whole amount advanced $15,711.43, and that the whole contract price of the logs received on said contract was the sum of $14,052.42; *third*, that plaintiffs have requested and demanded of the defendant that he deliver to them all of the pine logs cut by the defendant upon the lands described in the contract during the summer of 1886 and the spring of 1887, or pay back to the plaintiffs the sum so overpaid by them on said contract, and that the defendant has refused so to do. They claim damages for the sum of $1,659, with interest from May 1, 1887, and also for the sum of $854.19 for the expense of loading said logs, and interest from May 1, 1888.

The plaintiffs, as a separate cause of action, claimed the further sum of $541.22 for work and labor performed, and goods sold and delivered to the defendant, and for money paid out and expended by the plaintiffs for the defendant, at his request, between the 6th of July, 1886, and the 1st of December, 1887, and claims judgment for the sum of $2,513.20 with interest from May 1, 1888, and for the further sum of $268.70 with interest from January 1, 1888, and the further sum of $600 damages, etc.

To this complaint the defendant answered, admitting the contract set out in the complaint, and alleging that by said contract the plaintiffs agreed to furnish at said Sweeney's side track sufficient cars on which to load said logs, which the defendant should put and place at said side track, and to furnish the same in a reasonable time after said logs should be put in and placed at said side track by the defendant. The defendant then alleges that, under said contract, he caused to be cut from the lands described in the contract 3,406,538 feet, board measure, and delivered said logs to the plaintiffs at said Sweeney's side track, ready and

fit to be there loaded on the cars, before the 15th day of March, 1887, and of these logs 3,039,123 feet would scale twelve inches at the top, and were one half sound, and that those that would scale less than twelve inches at the top, or would not scale one half sound, were in amount 367,415 feet. The answer further alleges that at all times from the 15th of March to the 10th of May, 1887, he was ready and willing to load said logs on the cars at said side track, and kept for that purpose a suitable crew of men; that a few days after the 15th of March, 1887, and several times thereafter and before the 10th of May, 1887, he notified the plaintiffs that the logs were at the side track ready to be loaded, and, that he was ready, willing, and desirous of loading the same, and requested the plaintiffs to furnish the cars for that purpose; that during all that time the plaintiffs neglected and refused to furnish any cars at said side track on which to load said logs. And the defendant further alleges that more than a reasonable time to furnish said cars had expired after said logs were placed by defendant at the side track ready to be loaded, etc., and that, by reason of the neglect of the plaintiffs to furnish such cars within a reasonable time for loading the same, the title of said logs, and the risk of injury thereto, had fully vested in the plaintiffs, and that said logs were their property on the 10th day of May, 1887. The answer then proceeds as follows:

"And the defendant alleges that before the fire herein mentioned, and on or about the 10th day of May, 1887, he fully settled with the plaintiffs the said contract and the logging done thereunder and all matters relating to the same, and it was then found and agreed between them that the quantity of logs which the defendant had put in for the plaintiffs under the said contract, and delivered at said side track, was, of the aforesaid first kind, 3,039,123 feet, and of the aforesaid second kind, 367,415 feet, as before stated, and

that the contract price for the same was $17,817.41; and the plaintiffs then and there accepted the said logs, and all of the same, and assumed and took upon themselves the loading of said logs still remaining unloaded at said side track, at thirty-five cents per thousand feet, and agreed to and with the defendant to charge him that sum per thousand feet for the loading thereof, and the defendant then and there agreed to pay the plaintiffs that sum per thousand feet for their taking upon themselves the loading of said logs.

"And alleges, on information and belief, that at said time the quantity of said logs at said side track, and not loaded on cars, was about 1,900,000 feet, and the said price for loading the same was $665. And he alleges that afterwards, and about the 20th day of May, 1887, said logs at said side track caught on fire, and many of them were removed from said side track to save being burned; and this defendant immediately thereafter replaced the same at said side track ready for loading, and before the commencement of this action fully performed all the terms and conditions of said contract on his part to be done.

"And by reason of the foregoing the plaintiffs became indebted to the defendant in the sum of $17,152.41; and the same was due on the 10th day of May, A. D. 1887, and has not been paid in whole or in part, except so far as hereinafter set forth."

The defendant then answered and by way of counterclaim set up the same facts as above stated in his answer, and claimed that he had fully performed the contract on his part and that there was a balance due him from the plaintiffs on said contract of the sum of $1,526.98.

On the trial in the court below the jury found a verdict in favor of the defendant, and against the plaintiffs, for the sum of $500. The plaintiffs appeal to this court, and allege as errors "(1) that the court below, against plaintiffs' ob-

jections, admitted immaterial, irrelevant, and incompetent evidence; (2) that the court below erred in its instructions to the jury, and in refusing to instruct them as requested by the plaintiffs; (3) that the verdict is contrary to law and evidence; (4) that the court erred in denying plaintiffs' motion to set aside the verdict and grant a new trial."

For the appellants there was a brief by *Cate, Jones & Sanborn*, and oral argument by *D. Lloyd Jones.*

*H. H. Hayden*, for the respondent.

TAYLOR, J.   The contention made by the learned counsel for the plaintiffs is that, as the written contract between the parties does not state who shall furnish the cars upon which the logs were to be loaded at the switch, it was improper to admit parol evidence for the purpose of showing that the plaintiffs were to furnish them.  This objection was not much relied upon by the learned counsel on the argument in this court, and it is evident to us that, in the absence of any evidence on the subject except the contract itself, the learned judge was right in instructing the jury that it was the duty of the plaintiffs to furnish the cars.  The duty of the defendant in regard to the delivery of the logs under the contract ended when they were placed on the cars.  By the terms of the contract, the plaintiffs were to receive them on the cars, and then the absolute title passed to them.  The defendant was in no way bound to pay for the use of the cars on which they were to be loaded, or to pay for their transportation after they were placed on the cars.  The plain inference to be derived from the contract is that the plaintiffs were to furnish the cars to receive and transport the logs to their destination.  The admission of parol evidence showing that such was the interpretation of the contract by the parties did not, therefore, prejudice the plaintiffs. Had the contract been so uncertain and ambiguous on this point as to have left the matter in doubt as to whose duty

it was to furnish the cars, it would probably have been competent to show what the understanding of the parties was by parol evidence.

But the more important question raised by the learned counsel for the plaintiffs arises upon the other provision in the contract in regard to the delivery of the logs. The contract, after having described the logs which were to be cut and delivered by the defendant to the plaintiffs, and fixed the price therefor, provides as follows: " Said party of the first part [*Sweeney*, the defendant] agrees to log at least 1,500,000 feet of said logs in the summer of 1886, and the balance during the spring of 1887, and furthermore agrees to load all logs on cars at Sweeney's side track of Wisconsin Central Railroad Company, *as ordered by said party of the second part* [the plaintiffs in this action], and to furnish enough crews to load forty cars and more if practicable per day, the logs to be scaled by a competent scaler to be agreed upon by both parties, and further agree that the title to said logs shall vest in the said second named party as fast as loaded on cars." It is insisted by the learned counsel for the plaintiffs that under this contract the plaintiffs were not under any obligation to require the defendant to load these logs on the cars at Sweeney's landing within any definite or fixed time, and that it was wholly in their discretion when they should be loaded, and that until they ordered them loaded the title to the logs remained in the defendant, and he took all the risks incident to their ownership. On the part of the learned counsel for the defendant, it is contended that, as no time was fixed within which the plaintiffs were bound to require the logs to be loaded, and to furnish cars for that purpose, the law is that the defendant had the right to insist that the cars should be furnished upon which he might load the logs within a reasonable time after he had hauled them to the place of loading, and that the plaintiffs had no right to compel him to take

the risk of the destruction of the logs by fire or otherwise for an indefinite length of time after he had hauled them to the place for loading and was ready and willing to load the same.

The learned circuit judge on the trial adopted the view taken by the defendant, and held that under the contract the plaintiffs were bound to furnish at Sweeney's side track cars upon which the defendant might load such logs, within a reasonable time after they had notice that the logs were at the track ready to be loaded by the defendant. The evidence shows quite satisfactorily that the logs were all hauled to the side track by the defendant as early as the 15th of March, 1887, and that he was then ready and willing to load the same. It also shows that between that date and the 10th of May next thereafter the defendant on several occasions notified the plaintiffs that the logs were ready for loading, and requested them to furnish the cars for that purpose. It also appears in the evidence that during this time said logs were in danger of destruction by fire on account of the dryness of the weather, and of fires burning in their vicinity, and that the plaintiffs' attention was called to this fact by the defendant. It also appears that on or about the 20th of May, 1887, and before the plaintiffs had furnished any cars on which to load said logs, a large number of them were destroyed by fire without the fault of the defendant. The only real controversy on the trial of this action was as to who should bear the loss of the logs so destroyed. The plaintiffs insist the loss must fall upon the defendant, and the defendant insists that the loss must fall upon the plaintiffs.

The question as to whether the plaintiffs had a reasonable time to furnish the cars after notice of the readiness and willingness of the defendant to load the same, and before the logs were burned, was submitted to the jury, upon all the evidence, by the following instructions, viz.:

" There is no time expressed in the contract when the cars

should be furnished to transport the logs upon which the defendant was to load them at Sweeney's side track. There being no time fixed in the contract between the parties, the law implies that they should have a reasonable time to furnish them in. And this you will find from the evidence, and take into consideration, in establishing that fact in your minds, all of the facts that have been proven here in regard to this point, remembering that all facts and circumstances that have been made to appear here in the trial of this action are proper for you to consider. Take into consideration the circumstances surrounding the plaintiffs as well as the defendant, and from all this evidence get at the understanding of the parties, as near as possible, from this written contract and from these facts and circumstances that have been established here on the trial of this action. It has been said that 'it is a reasonable time which preserves to each party the rights and advantages he possesses, and protects each party from losses he ought not to suffer.' In other words, you should find whether the plaintiffs delayed longer than a reasonable time in receiving these logs, taking into consideration the evidence showing the condition of the pond as to logs being on hand, the opportunities that the defendant had of knowing those facts, and establish in your mind whether or not the plaintiffs were ready to receive them within a reasonable time, according to the understanding of the parties in this action. The plaintiffs claim that they did not receive all the logs logged under the contract, and it seems to be undisputed that the reason was on account of the destruction and injury of a large portion of these logs, which occurred on the 19th or 20th of May, by fire. And this will be one of the leading questions for you to establish,— on whom the loss of those logs shall fall."

Exceptions were taken to portions of these instructions. Upon consideration of the whole contract, it seems to us

that these instructions were correct. It would be unjust to the defendant to require him to get out and haul the logs to the place mentioned for loading them on the cars within a specified time, as this contract does, and then require him to keep them there at his risk, for an indefinite period, at the pleasure or caprice of the plaintiffs. The contract must receive a reasonable construction, and such construction as was within the intention of the parties when they made it. It is evident that the defendant would be subject to greatly increased expense in performing the contract on his part if the time for loading them on the cars was to be wholly in the control of the plaintiffs, in addition to the increased risks from fire and otherwise by any unreasonable delay on the part of the plaintiffs in providing the cars for loading; and the contract ought not to receive such construction unless it be plainly so written. The delay in this case after the defendant had the logs ready for delivery on the cars, before their destruction by fire, was over two months; and it was clearly a proper case for the jury to determine, upon the whole evidence in the case, whether the delay was a reasonable one. In this case, upon the evidence, the reasonableness or unreasonableness of the delay was a mixed question of law and fact, and was for the jury. We think the law is well settled that, where there is no time fixed for the doing of an act which a contracting party agrees to do, he must do such act within a reasonable time; and what will in the particular case be a reasonable time depends upon the nature of the act to be done, the nature of the contract, and all the circumstances relating to the same. See *Waterman v. Dutton*, 6 Wis. 265; *Nudd v. Wells*, 11 Wis. 407; Benj. Sales, p. 891, § 1023, and p. 914, § 1048; *Stange v. Wilson*, 17 Mich. 342, 348; *Coon v. Spaulding*, 47 Mich. 162; *Cullum v. Wagstaff*, 48 Pa. St. 300; *Tufts v. McClure*, 40 Iowa, 317; *Cameron v. Wells*, 30 Vt. 633; *Bass v. White*, 65 N. Y. 565; *Myers v. DeMier*,

52 N. Y. 647; *Sanborn v. Benedict,* 78 Ill. 309; *Sweet v. Harding,* 19 Vt. 587; *Pinney v. F. D., St. P. & P. R. Co.* 19 Minn. 251. There was no error, we think, in these instructions.

Upon the effect of the neglect or refusal of the plaintiffs to furnish the cars within a reasonable time after the logs were delivered at the side track, the court instructed the jury as follows:

"If you find from the evidence in this action that the defendant, at the commencement of spring, had so far completed his contract and performed all conditions thereof on his part, so that all that remained to be done by him was to load the logs on cars, and that he so notified plaintiffs and requested cars to be got for that purpose after he was so ready and before the property was burned, and you also find from the evidence that a sufficient time had intervened before the fire for the plaintiffs to have complied with the request of the defendant, and that a reasonable time had passed from the commencement of the spring and after such demand, in view of all the circumstances of the case, for the plaintiffs to have furnished the cars and for defendant to have loaded the logs thereon before they were destroyed or injured, and there was no agreement that the defendant should load only as requested by plaintiffs, without regard to reasonable time, and the plaintiffs refused to furnish cars or receive said logs during the spring,— in such case the loss or injury occasioned by the fire, if such loss was occasioned without the fault or neglect of defendant, would then be borne by the plaintiffs, and the plaintiffs became and are liable to defendant for the purchase price of the logs as stated in the contract after such quantity is determined by the scale of the scaler agreed upon, as verified by the district scaler."

This instruction was also excepted to by the plaintiffs, and is alleged to be erroneous for two reasons: *first,* it is

alleged that if the refusal of the plaintiffs to receive the logs, or furnish cars on which to load them, within a reasonable time, would render them liable to the defendant for their destruction by fire after such refusal, the defendant could not avail himself of such liability in this action, because it is claimed that the defendant's counterclaim is for logs sold and delivered to the plaintiffs under the contract, and not to recover for damages for the refusal of the plaintiffs to receive and accept the logs under the contract. We are inclined to hold that this objection should not prevail. The answer sets out all-the facts, and, if the facts stated would entitle him to recover as damages the value of the logs destroyed by fire, because the plaintiffs had unreasonably refused to receive the same or furnish cars on which the defendant could load them according to the contract, the defendant should not be turned over to another action because he claims, in his pleading in this case, that the title to the logs, by reason of such neglect and refusal, vested in the plaintiffs. The counterclaim is so pleaded that the defendant is entitled to recover upon either theory of the case; that is, upon the ground that the delay of the plaintiffs in receiving the logs renders them liable for the damage the defendant suffered by their destruction, or upon the ground that, by reason of the defendant's offer to deliver the logs on the cars, and the refusal of the plaintiffs to furnish the cars within a reasonable time so that defendant could make the delivery, the defendant was relieved from making a further delivery of the logs destroyed, and could recover as for logs sold and delivered under the contract.

We think, upon principle and authority, if the defendant was ready and willing to load the logs on the cars, as required by the contract, within a reasonable time after they were delivered at the Sweeney side track, and so notified the plaintiffs, and offered to load them, and they refused and neg-

lected to furnish the cars for an unreasonable length of time, so that the defendant was prevented from delivering them, and thereafter the logs were destroyed by fire, such offer to load the logs on the cars, and such refusal of the plaintiffs to furnish cars within a reasonable time, released the defendant from making any further delivery of them to the plaintiffs on their contract, and he could recover their value as delivered under the contract, less the cost of loading them on the cars; or the defendant might maintain an action against the plaintiffs for a breach of the contract on their part, and in such action recover as damages the contract value of the logs so destroyed, less the cost of loading the same. See *Danley v. Williams*, 16 Wis. 581; *Ketchum v. Zeilsdorff*, 26 Wis. 514; *Risley v. Smith*, 64 N. Y. 576; *Blood v. Enos*, 12 Vt. 625; *Devlin v. S. A. R. Co.* 44 Barb. 81; Bish. Cont. §§ 1424, 1431; *Dodge v. Rogers*, 9 Minn. 223; *Camp v. Barker*, 21 Vt. 469; *Williams v. Bank*, 2 Pet. 96, 102; *Stewart v. Keteltas*, 36 N. Y. 388; Benj. Sales, p. 980, § 1125, note 6; *Bement v. Smith*, 15 Wend. 493; *Pollen v. Le Roy*, 30 N. Y. 549, 556; *Hunter v. Wetsell*, 84 N. Y. 555; *Bagley v. Findlay*, 82 Ill. 524; *Bell v. Offutt*, 10 Bush, 632, 639; *Ballentine v. Robinson*, 46 Pa. St. 177; *Gordon v. Norris*, 49 N. H. 376, 383; *Shawhan v. Van Nest*, 25 Ohio St. 490; *McLean v. Richardson*, 127 Mass. 339, 345; *Armstrong v. Turner*, 49 Md. 589, 599; *Barton v. McKelway*, 22 N. J. Law, 165; *Hughes v. U. S.* 4 Ct. Cl. 64; *Nichols v. Morse*, 100 Mass. 523.

These authorities clearly show that in this country the courts hold that, in an action upon an executory contract for the sale and delivery of personal property, the vendor may recover the value of the goods contracted for, if he tenders a delivery thereof in accordance with the terms of the contract, and an actual delivery is prevented by the refusal of the vendee to accept or receive the same at the time and place agreed upon. This is especially true in

cases where the property to be delivered is to be produced by the labor of the vendor after the contract is made. See *Meincke v. Falk*, 55 Wis. 427. Upon the evidence in this case and the instructions of the court, the jury may have found that the defendant tendered a delivery of the logs on the cars as provided by the contract, within a reasonable time, and that the plaintiffs refused to accept such delivery, and refused to accept any delivery thereof within a reasonable time after they were placed at the side track by the defendant. *Ganson v. Madigan*, 13 Wis. 67, 72; *Crawford v. Earl*, 38 Wis. 312, 317; *Chapman v. Ingram*, 30 Wis. 294, 295. In the case at bar the logs were hauled by the defendant to the place where, by the terms of the contract, he was to haul them; and, after having tendered a delivery of them on the cars as required by the contract, the logs were left in the same place subject to the control of the plaintiffs. The facts proved bring the defendant within the rule above stated, which justifies a recovery for the value of the logs as though actually delivered. The only very important question in the case was whether the plaintiffs were bound to furnish cars on which to load the logs within a reasonable time after the 15th of March, when defendant had them on the ground ready for loading. That question having been decided in favor of the claim made by the defendant, settles the question as to the justice of the verdict in favor of the defendant. In this view of the case, all the exceptions of the plaintiffs to the evidence offered on the trial which tended to establish the defense to the action as to the defendant's counterclaim were properly overruled.

But the defendant also set up, both as a defense to the action and by way of counterclaim, a settlement and agreement between the parties, made before the fire occurred, by which the plaintiffs released the defendant from loading the logs on the cars as he had agreed, and by which the

plaintiffs agreed to load them themselves, for a consideration to be paid them by the defendant, of thirty-five cents per M., and by which settlement and agreement the plaintiffs released the defendant from loading said logs as he had agreed to do under the contract. The evidence on this question of settlement was conflicting and somewhat contradictory. The question was submitted to the jury by the learned circuit judge with the following instructions, viz.:

"It was competent for the parties, after the making of the original contract, to modify or change the condition thereof by subsequent agreement; and such agreement, if made, need not have been in writing in order to effect the modification or change of said contract, provided said new agreement was based upon a valuable consideration; and the burden in that particular is upon the defendant to show that the written contract was modified, and especially as to the plaintiffs' loading logs and relieving the defendant from loading the same. If, therefore, you find from all the evidence in the case that subsequent to the making of the contract, and before the logs were burned, the plaintiffs agreed to relieve the defendant from that condition of the contract as to loading the same, and agreed to do the loading themselves, and the contract was otherwise performed by the defendant at such time, then there was such a complete acceptance of the logs by plaintiffs as would make the loss and injury occasioned by the fire to be borne by them. But the mere fact of the plaintiffs' agreeing to load these logs in controversy, without they agreed to take them at the side track, does not of itself make the plaintiffs liable for their loss; for, by the terms of the written contract admitted in evidence in this case, the title to the logs in dispute did not pass to plaintiffs until they were loaded on the cars. It was, however, competent for the parties to change the provision in this contract as I have stated."

Boyington and another vs. Sweeney.

These instructions are certainly sufficiently favorable to the plaintiffs, and there is no fair ground of complaint on their part. This settlement and agreement was set forth in the answer and counterclaim, and was supported by the positive testimony of the defendant, and his testimony was corroborated to some extent by other evidence in the case. It is true it was denied by one of the plaintiffs and by another witness who claims to have been present at the time the defendant claims such settlement and agreement was made, but the question of the credibility of the witnesses was for the jury, and they may have believed the testimony of the defendant instead of that of the plaintiffs. As there was no special verdict, the jury may have found for the defendant upon this part of his defense and counterclaim.

We see no error in permitting the defendant to show how much and in what manner he had been paid by the plaintiffs upon the contract, nor do we think the court erred in his statement to the jury as to what credit they might give to the testimony of a witness, some of whose statements they believe are false. The sentence excepted to may not, standing alone, be entirely a proper one to make to the jury; but, as qualified by what was said immediately before and after the sentence excepted to, the jury could not have been misled as to this matter to the prejudice of the plaintiffs.[1]

*By the Court.*— The judgment of the circuit court is affirmed.

---

[1] The charge of the court upon this point was as follows: "You should not reject the testimony of any witness from mere caprice or without reason, but give the testimony of each witness such weight as you think it is entitled to receive. [If you believe that any of the witnesses have not stated the truth, from their appearance on the stand or on account of their statements being improbable or for any other reason, you can reject his testimony.] But you should not reject it without due care." Plaintiffs excepted to the sentence inclosed in brackets.— REP.