1841.

Duffield
. *v.*
Whitlock.

---

## DUFFIELD and others, *appellànts,* and WHITLOCK, *respondent.*

Where a *lease* contained a covenant that at the expiration of the term the buildings erected by the tenant on the premises should be appraised, and that the lessor should either pay the appraised value or grant a new lease of the premises for the term of twenty years upon such terms *as he might think proper,* and *as might be approved by the lessee;* and in case the lessee should not approve of the terms offered, that he should have the right to remove the buildings within three months after the expiration of the lease, IT WAS HELD that the covenant was too vague and indefinite, to authorize a decree for a new lease, and that the offer of a lease, though at an exorbitant rent, released the lessor from all obligation under the covenant, except to permit the removal of the buildings, and consequently, that he was not liable to pay the *appraised value.*

APPEAL from Chancery. On the 1st day of June, 1814, the appellants, or those whom they represent, executed a lease to one N. Howland of a tract of land in

1841.

Duffield
v.
Whitlock.

Brooklyn, on which a new rope-walk had recently been built by Howland, under a previous agreement for the lease, for the term of twenty years, at an annual rent of $152.50. The lease contained a *mutual covenant* that the building then erected or to be erected by the lessee, and which should be standing and being on the demised premises at the expiration of the term, should be appraised by three indifferent persons: one to be chosen by the lessors, another by the lessee, and the third by the appraisers named by the parties; and the lessors should either pay the appraised value of the buildings and improvements to the lessee or his assigns, or would grant a new lease of the premises for the term of 20 years, upon such terms as the lessors might think proper, and as might be approved by the lessee or his assigns; and in case the lessee or his assigns should not approve of the terms offered by the lessors, that then the lessee or his assigns would have the right and liberty to remove the buildings and improvements, within the space of three months after the expiration of the lease. In April, 1829, Whitlock, the respondent, succeeded to the rights of Howland, by assignment. In March, 1834, appraisers were duly appointed, and in the month of April, following, a written submission under seal, was entered into by the parties, reciting the lease, the covenant contained in it, and the appointment of appraisers, and agreeing to stand to, abide and perform the *appraisement to be made under and pursuant to the covenant* contained in the lease. On the first day of June, 1834, the buildings were appraised at the sum of $2,307. On the third day of June, the appellants gave notice to the respondent, that they declined to pay the appraised value of the buildings, and tendered to him a new lease of the premises for a term of twenty years at an *annual rent of six thousand dollars*. The respondent thereupon filed his bill, alleging that the tender of the new lease was collusive and not made in good faith: the annual rent demanded being equal to the value of a moiety of the premises,

and praying that the appellants might be decreed to pay to him the sum at which the buildings had been appraised, or if the Chancellor should deem the *submission* not obligatory, then that they pay the amount of the appraised value of the buildings with the interest thereon; and that it be referred to a master to ascertain and report what would be a *fair rent* for the premises for a further term of twenty years from the 1st day of June, 1834, and that on the coming in of the report, the appellants be decreed to execute a new lease of the premises, at such annual rent as the Chancellor should deem proper; and concluding by praying for further and other relief, &c.

The appellants (the defendants below,) put in an answer, denying that the rent demanded in the new lease, was extravagant or unreasonable. The cause was heard on the pleadings, and proofs by the ASSISTANT VICE-CHANCELLOR in the city of New-York, who held that under the terms of the covenant, the complainant was not entitled to a decree for a new lease, but that by the *submission* to the appraisers a *new agreement* had been entered into between the parties which should be enforced, and he accordingly decreed the sum found by the appraisers as the value of the buildings to be paid to the complainant. *See his opinion,* 1 *Hoffman's Ch. R.* 110. From this decree the defendants below appealed to the CHANCELLOR, who concurred in opinion with the Vice-Chancellor that under the terms of the covenant there could be no decree for a new lease, but differed with him as to the effect of the *submission*: holding that by its terms a *new agreement* was not necessarily created. The CHANCELLOR, however, held that the rent demanded was unreasonable, and that therefore the defendants had failed in tendering a lease according to the spirit of the covenant, and having thus failed they should be held to pay the sum appraised as the value of the buildings, and on this ground he affirmed the decree. The defendants appealed from the decree of the Chancellor. The case was argued here by:

1841.

Duffield
*v.*
Whitlock.

*S. Stevens*, for the appellants.

*G. Brinckerhoff*, for the respondent.

After advisement, the following opinion was delivered:

*By the* CHIEF JUSTICE.   The bill was filed by the respondent to compel either the renewal of a lease of a certain rope-walk in the city of Brooklyn, given by the appellants in June, 1814, for a further term of twenty years, or payment of the appraised value of the buildings and improvements which the tenants had erected upon the demised premises, agreeably to the stipulations of a covenant contained in the lease.   The case turns upon the true construction of the covenant.

The Assistant Vice-Chancellor before whom the case was first heard, came to the conclusion that the covenant was too imperfect and uncertain to authorize a court of chancery to compel the execution of a new lease different from the one already tendered; but held the appellants bound to pay the amount of the appraisal upon the peculiar terms of the bond of submission entered into by the parties.   On appeal the Chancellor rejected this ground of liability as untenable, but held the appellants bound to tender a lease for the term of twenty years, at such rent and upon such terms as they might deem reasonable: and as he regarded the rent claimed as extravagant, and which the parties themselves must have known to be unreasonable, he thought the spirit of the agreement violated, and the lessee not bound to remove the buildings, but entitled to the value as appraised.

I agree with the Chancellor, that the bond of submission was but in pursuance of the stipulations in the lease, and created no binding obligation of itself upon the appellants beyond what arose out of the covenant.   That, required the appointment of appraisers, a submission and an award, in order to carry out the original agreement of the parties. The usual clause contained in the submission, to stand to,

abide by, and perform the appraisement, is here qualified by the reference to the covenant and fairly imports nothing more than an agreement to submit to the award, for the purposes therein contemplated.

The case, therefore, turns upon the true intent and meaning of the covenant itself; and it does seem to me on looking at the words and construing them according to the ordinary meaning which the parties would naturally attach to them, there cannot be a well founded doubt as to the true understanding of it. The appellants were to pay the appraised value of the buildings, or grant a new lease for twenty years, upon *such terms as they might think proper*, and as might be approved by the lessee. It would be difficult for either pary to have reserved a more unqualified discretion over the subject matter than is here found. No data are given by which either is bound, except the *term* of twenty years; every other ingredient which enters into and constitutes an indenture of lease, is left to the mutual volition of the parties:—the one is to grant, if at all, upon such terms as he thinks proper—the other to accept or not, at pleasure. There is not only an absence of terms specified, upon which the letting is to take place, but there is an express stipulation of each party that it is to be given, and accepted upon such as they may think proper at the time—both negative and affirmative evidence of an intent on the part of each to exercise a personal, uncontrolled discretion in the matter.

Nor is there any thing unnatural or unreasonable in the idea of the parties inserting in this lease a covenant of renewal in these general and, as we suppose, unobligatory terms. The property lying in the village of Brooklyn, adjoining the city of New-York, both parties probably anticipated a considerable rise in the value during the term of twenty years, the period the first lease had to run; it was important, therefore, for the owner to reserve the right at the expiration of the term to determine at will the terms of renewal, so as to be able to exact what he might regard as

the enhanced value of the property; and equally so was it to the other, that he might not be obliged to occupy ground for his particular business, the value of which would fairly entitle the owner to a much heavier rent than the business would warrant. Hence the reservation to grant the new lease upon such terms as the lessors might think proper, and the right of the lessee to approve, or embrace the alternative of removing the buildings.

But whatever may have been the reasons that influenced the parties, it seems to me, that the lessors, with the exception of the term for which the new lease was to be given, have reserved to themselves as entire control over the terms and conditions of the new lease, as if the application had been an original one to rent the premises; that they were left as free in every other respect, as can belong to the independent owner of the freehold, who may fix his terms at discretion.

The good sense of the covenant, I think, is this: after the buildings are appraised, the lessors may elect to pay or not, *and* if they refuse, the lessee has three months to remove them. The new lease spoken of was but a suggestion, dependent upon the amicable arrangement of the parties; it bound nobody. It is conceded the lessee is not bound to accept whatever may have been the terms of the lease tendered; and I think the lessors under no greater obligation, for a stipulation to tender such an one as they may think proper, legally speaking, carries with it no binding force. The power thus reserved, is no more nor less than what belongs to every landholder, before he enters into the contract.

But, if the lessors were bound to tender a lease, I find nothing in the covenant that will authorize the court to dictate the amount of rent, or any other terms, or conditions to be embraced in it, except its duration, unless we assume to make a lease for a party who has not only not entered into any agreement to this effect, but has expressly reserved to himself the privilege of settling the amount

and fixing the conditions according to his own notions of what may be for his interest.

I cannot, therefore, concur in the construction given to this part of the covenant in the court below, and must vote to reverse the decree.

*Senator* VERPLANCK was of opinion, that the covenant might be construed into an agreement on the part of the lessors, that at the expiration of the term, they would either grant a new lease upon such terms as the parties should agree upon, *or* pay the appraised value of the buildings, giving to the tenant the right to remove the buildings in case of non-payment; it being a rule in the construction of covenants, that such construction shall be adopted which is most beneficial to the covenantee. He, therefore, would vote for an affirmance of the decree.

*Senator* NICHOLAS said, that although there was an express stipulation providing for an appraisement, it appeared to him the only remedy contemplated by the parties in case the new lease was not accepted, was a removal of the buildings; and if so, the tenant was not entitled to demand payment of the value of the buildings. He would, therefore, vote for a reversal of the decree of the Chancellor.

On the question being put, *Shall this decree be reversed?* the members of the court divided as follows:

*In the affirmative:* The PRESIDENT of the Senate, the CHIEF JUSTICE, and *Senators* DICKINSON, DIXON, FURMAN, HAWKINS, HULL, H. A. LIVINGSTON, NICHOLAS, PECK, PLATT, SCOTT and STRONG—13.

*In the negative:* Senators CLARK, DENNISTON, HOPKINS, HUMPHREY and VERPLANCK—5.

Whereupon the decree of the Chancellor was REVERSED.