THE DOMESTIC TELEGRAPH AND TELEPHONE COMPANY, OF NEWARK, NEW JERSEY

*v.*

THE METROPOLITAN TELEPHONE AND TELEGRAPH COMPANY, AND THE NEW YORK AND NEW JERSEY TELEPHONE COMPANY.

1. A court of equity may, in a proper case, decree the specific performance of a contract to renew a license.

2. Specific performance of a contract will not be decreed, unless the contract has actually been concluded; or, if any material part of it still rests in treaty, and remains to be settled by further negotiation, equity will not interfere.

3. No court has power to make a contract for persons *sui juris*, nor to compel them to agree with each other.

4. Where an injunction is sought in aid of action for specific performance, if the complainant's case is strong enough to render it at all probable that the complainant may, on final hearing, be able to convince the court that he is entitled to relief, the court will, as a general rule, award the writ, but will refuse it in cases where it appears that the contract sought to be enforced has not yet been made, or, if made, that it is so incomplete or uncertain as to be unenforceable.

On motion for an injunction heard on bill and affidavits and answer and affidavits, and order to show cause.

*Mr. Henry Young* and *Mr. Thomas N. McCarter,* for complainant.

*Mr. Joseph D. Bedle,* for defendants.

VAN FLEET, V. C.

The main object of the bill in this case is to procure a decree directing the specific performance of a contract. The complainant asks for an injunction, pending the suit, as auxiliary to the principal relief sought; in other words, to preserve to it the possession and use of certain property, which it is now unquestionably entitled to hold and use, if it shall be made to appear on

final hearing that the complainant is entitled to the relief it seeks. The question now before the court is, whether an injunction shall be granted or not.

The contract on which the complainant rests its right to relief was made by the complainant with the Bell Telephone Company, of New York, and bears date August 6th, 1879. Prior to the date last named, the Bell Telephone Company, of New York, had, by force of a license granted to it by the Bell Telephone Company, of Boston, acquired an exclusive right to use, and of licensing others to use, the patented instrument, known as the Bell telephone, in all the territory lying within a radius of thirty-three miles from the New York city hall in all directions, and also in all the territory of Long Island, in the state of New York, and of Monmouth county, in the state of New Jersey, but excluding any part of the state of Connecticut lying within such boundaries. The contract is lengthy, and contains a great many provisions having no connection with the complainant's present claim. Reference will only be made to such parts of it as are necessary to show its general character, and to the particular provision on which the complainant's action is founded.

It provides, in the first place, that the Bell Telephone Company, of New York, shall furnish to the complainant, in such quantities as may be required, Bell telephones to be used by the complainant in establishing a system of telephonic inter-communications within the city of Newark, in the county of Essex, and the townships of Harrison and Kearney, in the county of Hudson, but not elsewhere. The complainant binds itself to pay an annual royalty on each telephone delivered to it; to prosecute the business of introducing telephones diligently, not to use any other telephones than those furnished by the Bell Telephone Company, of New York, and not to permit any connection to be made between its lines and any other lines, except such as may be owned or controlled by the Bell Telephone Company, of New York. The Bell Telephone Company, of New York, reserves to itself the exclusive right of establishing telephonic communication between the complainant's district and other districts, and to regulate the charges on messages passing from one district into

11

another. It also agrees that, so long as the complainant keeps its contract, it will not authorize the use of the Bell telephone, or any other telephone, by any other person within the complainant's district, so as to interfere in any manner with the complainant's business. The contract also provides that a failure by the complainant to prosecute the business of introducing telephones diligently, or a violation by the complainant of its covenant not to permit a connection to be made between its lines and any other lines, except such as may be owned or controlled by the Bell Telephone Company, shall, at the option of the Bell Telephone Company, of New York, operate to end the contract, and confer upon the Bell Telephone Company, of New York, a right to take possession of the complainant's district, and carry on business therein as though no contract had been made. . By the ninth paragraph, it is agreed that the contract shall remain in force for the period of five years, commencing on the 1st day of September, A. D. 1879, and terminating on the last day of August, A. D. 1884, at which latter date the complainant promises that it will deliver, or cause to be delivered, to the Bell Telephone Company, of New York, or to its agents, all telephones theretofore delivered to it and not previously returned. The eleventh paragraph is the one on which the complainant grounds its right of action. It is as follows:

" If, at the expiration of the above period of five years, the party of the first part shall not desire to conduct the business of telephonic district exchange directly within said district of the party of the second part, or of merging said district into some other district, but shall, on the contrary, desire to have such business conducted for it, then, and in such case, the party of the second part. shall have the first right of acquiring the license or agency to conduct such business at such rate or rental, and upon such terms as may then be fixed and determined by the party of the first part."

On the 1st day of July, 1880, the Bell Telephone Company, of New York, sold, and formally assigned, its telephone lines and business, and also all its rights under the contract with the complainant, to the Metropolitan Telephone and Telegraph Company, one of the defendants to this suit. The complainant assented to this transfer, and has since then fully recognized the

Metropolitan Telephone and Telegraph Company as the suc-cessor of the Bell Telephone Company, of New York, and as standing in the place of the latter corporation under the contract of August 6th, 1879, both in respect to the rights and obligations created by that contract. By several subsequent transfers the defendant, the New York and New Jersey Telephone Company, has become invested with whatever rights, in the complainant's district, it was within the power of the Metropolitan Telephone and Telegraph Company to pass, or transfer, as against the complainant. The New York and New Jersey Telephone Company, as well as its predecessors in right, all took with full notice of the complainant's rights. In the license granted by the Metropolitan Telephone and Telegraph Company to the New Jersey Telephone Company, now merged in and constituting part of the New York and New Jersey Telephone Company, it is expressly stated that the privilege thereby given shall not embrace the complainant's territory, unless the complainant shall not be able to compel an extension or renewal of its license. The grant, it thus appears, is merely provisional or conditional. It is to have effect, as against the complainant, in case the complainant cannot compel a renewal, but not if it can. The defendants now before the court, as well as the corporations in whose rights they stand, all acquired whatever rights they have with full notice, not only of the complainant's contract, but of the claim made by the complainant for a renewal of its license. The case stands, therefore, in all substantial respects, and for all purposes of justice, just exactly as it would have stood if the original contracting parties were now, instead of the present parties, the litigants before the court. If the complainant, on the facts now before the court, would be entitled to relief against the Bell Telephone Company, of New York, were it the only party defendant here, I take it to be entirely clear that it is entitled to the same measure of relief against the defendants now here.

In April, 1884, the complainant applied to the Metropolitan Telephone and Telegraph Company for a renewal of its license, or a new license. Its application was refused. Subsequently, the bill in this case was filed to compel the Metropolitan Tele-

phone and Telegraph Company to specifically perform the contract of August 6th, 1879, by granting to the complainant a new license, "*upon such terms as may be determined by the court.*" As ancillary to such relief, the complainant asks that, pending the litigation, an injunction shall issue, restraining the defendants from removing the telephones now in its possession; also from interrupting communication between the complainant's district, and other districts, and also from interfering with complainant's business in its district.

The power of the court to give the complainant the relief it asks is unquestionable. Though courts of equity do not, as a general rule, exercise as liberal jurisdiction over contracts of the kind which the complainant seeks to have enforced, as they do over contracts relating to land, yet their power to decree the specific performance of such contracts in a proper case, as, for example, where the complainant has not a clear, complete and adequate remedy at law, or where some other ingredient of equity is mixed with the transaction, is now firmly established. *Cutting* v. *Dana, 10 C. E. Gr. 265.*

The complainant's whole equity rests in the allegation that it is entitled, by the terms of the contract, to a renewal of its license. But upon what terms? The complainant says: "Upon such terms as may be determined by the court." Courts of equity may compel the specific performance of a contract which the parties have agreed upon, and which is sufficiently certain and definite in its terms to enable the court to see what they meant, but it is entirely beyond the power of any judicial tribunal to make a contract for litigants, or compel them to make a contract with each other. The principle which must govern the decision of this case is free from all doubt. No court has power to make a contract for persons *sui juris*. No specific performance of a contract can be decreed in equity, unless the contract be actually concluded, and be certain in all its parts. If the matter still rests in treaty, or if the agreement, in any material particular, be uncertain or undefined, equity will not interfere. *McKibbin* v. *Brown, 1 McCart. 1; S. C., on Appeal, 2 McCart. 498; Potts* v. *Whitehead, 5 C. E. Gr. 55; 8 C. E.*

*Gr. 512; Whitlock* v. *Duffield, 1 Hoff. Ch. 110; S. C., on Appeal, 26 Wend. 55; Waterman on Spec. Perf.* §§ *141, 152.* Specific performance will not be decreed unless it is shown that a contract has been concluded. The bargain must have been completely determined between the parties, and its terms definitely ascertained. So long as negotiations are pending over matters relating to the contract, and which the parties regard as material to it, and until they are settled and their minds meet upon them, it is not a contract, although as to some matters they may be agreed. *Brown* v. *Brown, 6 Stew. Eq. 650.*

The contract, it will be observed, does not contain an unconditional covenant of renewal, or, indeed, a covenant to renew at all, but it merely provides that, on the expiration of the term of the first license, and in a certain contingency, the complainant shall have the first right of acquiring a license. The covenant is not that the licensor shall renew the complainant's license, nor that the complainant shall, if it desires, have a new license, but merely that it shall have a first or preferential right to acquire a license. This, it is plain, is not equivalent to a covenant to renew. Under a covenant to renew, the rights of the licensee are fixed and certain; they are superior to those of any other person, and determinate; no other applicant can compete with him, nor can the terms offered by any other applicant be contrasted with those offered by him. The licensor must renew if the licensee so elects, whether he is willing to or not. But under the language of this covenant the thing promised to the covenantee is not a renewal of its license, but merely the first right or chance to make a bargain for a license. Before any right can arise under such a stipulation, it is clear that it must be shown that a bargain has been made. Construed for the complainant as favorably as its language will warrant, it is manifest that all that the covenant gives the complainant is the first right to make a bargain for a new license. Such a covenant cannot be enforced in equity. But let us suppose that the contract gave the complainant an absolute right of renewal without specifying terms, then the question would arise, For what period and on what terms should the renewal be granted? These matters, by the plain

letter of the contract, are left entirely and absolutely to the will of the licensor, the language of the contract being that "the complainant shall have the first right of acquiring the license or agency to conduct such business at such rate or rental, and upon such terms, as may then be fixed and determined by the party of the first part." It would be difficult, I think, to find language expressing with more perspicuity than this does, an intention on the part of the licensor to reserve to itself an absolute and unqualified right to dictate the terms of the contract. There is not only an entire absence of a specification of the terms on which the new license shall be granted, but an express stipulation that the licensor shall have a right to exercise an uncontrolled will in fixing the terms. Under such a stipulation the licensor is left as free in every respect as it would be if no previous contract relations had existed between the parties, and the complainant now, for the first time, applied for a license. This court cannot compel a person to make a contract, the terms of which have not been agreed upon, though he may have covenanted to do so. If the licensor in this case had made an unconditional promise to renew for a definite period, but upon terms to be afterwards agreed upon or fixed by the licensor, the contract would be so incomplete and defective that it would be incapable of enforcement. *Duffield* v. *Whitlock, 26 Wend. 55*.

Nor is the complainant's case at all strengthened by the fact that since its contract was made, the corporation now having the right to grant a license for the complainant's territory, has agreed with the corporation owning the Bell telephone patents that it will not charge its licensees, as royalty or rental for telephones, in excess of a specified sum. The complainant is not a party to that contract, and consequently acquired no rights under it and did not become bound by its terms. If it is broken, the complainant will sustain no injury—at least none that the law can redress. The other contracting party is the only person who can suffer a legal injury by its breach, or ask legal or equitable redress for its violation. But in addition it is not pretended that that contract fixes or defines the period for which licenses shall be granted. The corporation to which the complainant must go

for a renewal of its license is absolutely unbound, either to the complainant or to any other person, as to the period the new license shall run, and is at liberty to fix a day or a week, just as it may will.   The fatal infirmity of the complainant's case is not that its contract is uncertain or incomplete, but that it has no contract.   Its licensor has never agreed that it would renew its license, and until such an agreement is made it is impossible for this court, or any other, to decree specific performance.   There can be no doubt that in a certain class of cases, courts of equity will decree the specific performance of contracts which are incomplete or uncertain in a material particular, but such jurisdiction is never exercised, except in cases where the contract itself provides a method or standard by which it may be completed, or its uncertainty rendered certain.   To illustrate: A contract for the sale of land, at a price to be agreed upon by the parties, will never be enforced in equity for the reason that a further bargain must be made by the parties before the court can decree what the vendor shall receive for his land.   But where the parties have agreed that the land shall be conveyed, not at a price to be agreed upon by themselves, but at a fair price or at a fair valuation, there, the parties having fixed a standard or measure of value, without having designated any particular method for ascertaining the price, the court may, without making a contract, ascertain the price according to the standard fixed by the contract, and enforce the contract.   *Van Doren* v. *Robinson, 1 C. E. Gr. 256 ; Gaskarth* v. *Lord Lowther, 12 Ves. 107 ; Wilks* v. *Davis, 3 Mer. 507.*   But this is the extreme limit to which any court has ever gone.

The complainant contends that its case falls directly within the principle established by these cases.   Its contention is this: That the contract on which its action is founded provides a method for settling the terms on which its license shall be renewed, and inasmuch as that is the fact an injunction should issue to preserve to it its business and the telephones now in its possession until the method provided by the contract for settling the terms shall have been tried and proved ineffectual.   The sixteenth paragraph of the contract declares that in the event of

disagreement between the parties, arising out of the contract, or any clause thereof, such matter of disagreement, unless it can be satisfactorily adjusted, shall be determined by arbitration. By this clause it is insisted that the parties have agreed that in case they cannot agree upon the terms of the new license, they shall be settled by arbitration. It is impossible for me to read the contract so as to give this clause any such effect. The clause under consideration simply provides for the reconciliation of differences or disagreements arising out of matters upon which the parties have already agreed, or for the settlement of matters upon which each party has a right to form a judgment or to exercise a will or choice. There can be no disagreement between the parties about the terms on which the new license shall be granted. They are to be such as shall be fixed and determined by the licensor. They are not the subject of agreement but of dictation. They need not be fair or reasonable or just—they may even be such as the licensor knows the licensee cannot accept. In making terms, the licensor has reserved to itself, in clear terms, absolute freedom, and in that respect it stands as completely unshackled as though no previous contract relations had existed between the parties. It is manifest, I think, that neither of the parties ever supposed that the terms on which the new license should be granted were, in any event or under any circumstances, to be settled by arbitration.

This is not a case, in my judgment, in which an injunction should be granted. It is true that in cases of this kind, where an injunction is sought in aid of an action for specific performance, that the court will, as a general rule, if the complainant's case is strong enough to render it at all probable that he may, on final hearing, be able to convince the court that he is entitled to relief, award an injunction; but in cases where there is no doubt—where it is clear that the contract sought to be enforced has not yet been made, or if it has been made, that it is so incomplete or uncertain that it cannot be enforced—an injunction must be denied, for the very obvious reason that the complainant has no equity which entitles him to the writ.

The order to show cause must be discharged, with costs.