## BUTTON v. HIGGINS.

1. CONTRACT—AMOUNT TO BE PAID—TIME OF PAYMENT.
A failure to fix value or time for payment for services will not invalidate a contract. The value of services can be established on a *quantum meruit*, and an agreement to pay in the future is held to be a promise to pay within reasonable time.
2. SAME—MARRIED WOMEN.
By our statute a *feme covert* can enter into any contract in regard to her own property that she could if sole; and the business affairs with regard to which she can contract are unlimited.

*Appeal from the District Court of Arapahoe County.*

ON the 5th day of May, 1892, appellee instituted suit against appellant, claiming by her complaint that the defendant (appellant) was indebted to her in the sum of $1,890, being balance due for labor and services performed for the defendant, "*at her special instance and request,*" as a general house servant, between May 1, 1885, and May 1, 1892, and that such services were reasonably worth $25 per month; that the amount so earned was $2,050, on which defendant had paid $160, leaving a balance as claimed above. A demurrer was filed to the complaint, which was overruled, and the defendant answered : 1st, denying specifically each and every allegation of the complaint ; 2d, a special answer setting up that from a time previous to December 1, 1875, and up to November 28, 1891, defendant was the wife of Henry Button, who died on the 28th of November, 1891. That about December 1, 1875, the mother of the plaintiff was a

poor widow with a large family of children, whom she was trying to support by her own labor; that she gave the plaintiff, who was then a little girl, to Henry P. Button, who received the plaintiff into his family, and who ever afterwards occupied to her the relation of a parent. That from the time plaintiff entered his family until the time of his death he maintained, clothed and educated plaintiff the same as he would or should have done had she been his own child. That from the time of the death of the said Button until about March 1, 1892, plaintiff remained with the defendant upon the same terms as she had previously made her home with Henry Button. That during all the time plaintiff took the name. of Button and was so known, and never at any time took the position or rendered any services as a servant. That whatever services she rendered were rendered gratuitously, and as a member of the family of said Button during his lifetime, and as a member of the family of defendant after the death of Button; that the said Henry Button, during his lifetime, and defendant, after his death, stood to the plaintiff *in loco parentis;* that while the plaintiff lived with Button and with defendant she never claimed to be a servant or asked for wages or intimated that anything was due her; that whatever money was ever furnished the plaintiff was a present, and was never paid as wages or as anything that was due her.

The replication was a general denial of the matters contained in the answer. The case was tried to a jury, resulting in a verdict and judgment for $1,224.

Mr. H. B. JOHNSON and Mr. S. S. ABBOTT, for appellant.

Mr. H. C. DAVIS, for appellee.

REED, J., delivered the opinion of the court.

The testimony establishes the fact that in 1875, at the age of eleven or twelve, appellee was taken into the family of

Dr. Button, then living in the state of Iowa. Though not adopted, she was cared for, treated and maintained as one of the family, sent to school until she was sixteen; after that, she, in common with Mrs. Button and a daughter of Mr. Button, of a former wife, performed the duties of the house, though it is shown a servant was kept a part or all the time while the family resided in Iowa.

In 1885 the family removed to Denver; no servant was kept; the household labor was performed by Mrs. Button, daughter and appellee; the family was quite large, and for a time boarders were kept. Dr. Button supported the family while living. Appellant had quite a property invested in real estate. In 1885, appellee, then 21 or 22 years old, proposed to leave the family and enter upon some occupation. Up to this time there is no question of the relation that existed. Dr. Button and Mrs. Button stood *in loco parentis* to her; she was treated and cared for the same as other members of the family, and no question had been raised in regard to compensation. It is claimed by appellee that on or about May 1, 1885, an agreement or contract was made with appellant, whereby she was to receive wages for her services, and that under such agreement she continued the service until March 1, 1892, when she was nearly 29 years old, having lived with the family about 17 years.

The testimony of appellee in regard to the alleged contract for the payment of wages was as follows: "Mrs. Button only furnished me cotton clothes during the last seven years; inherited more than one hundred and forty dollars ($140) and loaned Mrs. Button one hundred dollars ($100) of it, on which she paid interest for five years; just before I left, Mrs. Button let me have three hundred dollars ($300); told her I wanted to learn typewriting and she handed me the money; the three hundred dollars ($300) included the one hundred dollars ($100) she had borrowed, and forty dollars ($40) interest; never talked with Mrs. Button about wages in Iowa, but did in Denver, in the Charles block; had seen an advertisement in the paper, and I said I was going

out and earn some money, and she said, ' You will be well paid, you stay right here; ' asked her for money for wages, but can't remember the exact conversation; " and when recalled: " In the conversation with Mrs. Button, which I testified to having in the Charles block, I said I wanted to leave here, and she said, 'You stay right here; you will be well paid when I sell some of my property.' She said she would pay me. She said about the same at another time; "—which was partly corroborated by evidence of other witnesses in regard to statements made by appellant.

The testimony of appellant is in direct conflict with that of appellee, and to the effect that no contract or agreement to pay wages had ever been made, and no conversation ever had occurred in regard to it; that the same relation that existed from 1875 to 1885 continued until 1892, when appellee severed the relation and left.

The only questions to be decided by the jury were : *First*, (and all important), whether there was a contract and an agreement by appellant to pay wages—this being found affirmatively; *second*, what such services were worth. The contract to pay having been alleged, it is not necessary that the price should be fixed or alleged to have been fixed, as contended by counsel, nor did the failure to fix the price invalidate the contract of services, if one was made. The value or price of the service could be established by competent evidence on a *quantum meruit.* Nor did the failure to fix a time of payment invalidate it. If the jury believed the statement that appellant agreed to pay in the future, when she sold some real estate, they were warranted in finding a promise to pay within some reasonable time ; nor could the jury find from the evidence, as contended by counsel, that the payment was contingent upon the sale. It was not dependent upon such contingency, but as only being a designation of a future time when the payment was to be made ; nor was the contract invalid, as argued by counsel, on account of the coverture of appellant at the time of making the alleged contract. By our statutes a *feme covert* can enter into any contract in re-

gard to her own property that she could if sole, and there is no limit in regard to the business affairs she can contract in regard to. Although a wife, and it being incumbent upon the husband to support the family, she being, as shown, possessed of property, it was competent for her to assume pecuniary obligations in regard to the household expenses, payable out of her own estate.

The testimony was very conflicting as far as the issues upon trial were concerned. Counsel for appellant have assigned forty-five supposed errors as having occurred upon trial. Several of them may be termed general, not pointing out any particular error complained of. Upward of thirty are to the refusal of the court to admit offered testimony, most all of which was collateral or incidental matter showing relation and conduct of the family to each other, many of the incidents having occurred previous to the alleged contract of 1885. A careful examination of all the matters offered and excluded shows that none of it was competent, or directly affected the question of contract. Much of it was of circumstances from which inferences might be drawn prejudicial to the existence of a contract.

Appellant asked six instructions. Two were given and four refused. The refusal to give each of the four is assigned as error. The first instruction asked is clearly objectionable. It would in effect take the consideration of the case from the jury ; would be equivalent to directing a nonsuit. The second is fully and carefully covered and given in the court's second instruction. The same may be said of the fourth and fifth. They appear to have been substantially and fully covered by the court's instructions. A careful examination fails to disclose any serious objection to the instructions given. They appear to be a full and fair statement of all the law involved, and fully as favorable to appellant as warranted.

Much of the evidence given, as well as much that was offered, related to an undisputed condition of affairs while appellee remained a minor, and before making the agreement

relied upon. Had there been no agreement for services and wages, the presumption of law would be that the same relation that had formerly existed continued, notwithstanding her having attained her majority. Whether or not such relation had been severed and a contract of service made was the important fact to be determined. The evidence was conflicting. When such is the case, the jury are judges of the credibility of the witnesses testifying. They can credit or discredit, as they are impressed with the truth or falsity of the witness. Such discretion in the jury cannot be reviewed.

The jury having found the issues of fact for appellee, and no serious error having been found, the judgment will be affirmed.

*Affirmed.*