PARK and others, Appellants, vs. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Respondent.

*February 21—May 13, 1902.*

*Equity: Specific performance of contracts: Uncertainty: Discretion: Agreement to build branch railroad: Damages.*

1. Courts of equity exercise their discretion in the matter of granting or refusing their aid to enforce specific performance of contracts; and may refuse such aid where a contract lacks certainty as to essential terms, even though the uncertainty exists by reason of defendant's fault, or when any of such terms depend on the will, discretion, or personal acts of individuals, so that a decree, if granted, might fail of complete efficacy.

2. A railway company agreed with certain residents of a village to build and operate a railway from its main line (some ten or fifteen miles distant) northerly through said village to the north line of the county, such railway to be build and located on such line and location as the company should thereafter determine. The starting point, under such agreement, might be at any point within a space of about twenty-five miles. The company afterwards refused to locate or build the railway.

*Held,* that a decree of specific performance might properly be refused.

3. Where a court of equity refuses to enforce specific performance of a contract it should not retain jurisdiction for the purpose of awarding damages for the breach thereof, if no reason is shown why such damages should not be recovered at law.

APPEAL from an order of the circuit court for Polk county: A. J. VINJE, Circuit Judge. *Affirmed.*

Appeal by plaintiffs from order sustaining demurrer to the complaint. That pleading sets forth that the plaintiffs are residents, owners of various kinds of property, and engaged in various kinds of business at Balsam Lake, the county seat of Polk county, to which there is no railroad nearer than that of the defendant, crossing the county east and west, ten or fifteen miles away; that the plaintiffs, realizing the needs of the village, and for its general improvement and growth, and in order to facilitate their own business and promote their individual pecuniary interests, organized a railroad corporation under the name of Superior, Balsam Lake & Southern Railway Company (hereinafter called "Balsam Lake Railway"), for the purpose of constructing and operating a railway from some point on an existing railroad to the village of Balsam Lake, and thence to the north line of Polk county; that fourteen shares of stock were subscribed by leading citizens of Polk county,—the majority thereof by the plaintiffs,—but nothing paid in thereon. They thereupon proceeded to secure aid from Balsam Lake and other adjacent towns, in some of which the aid had been voted, and in others merely petitions had been secured, but not voted on. They also made surveys for a line commencing on the main line of the defendant's railroad, and extending in a northerly direction to the village of Balsam Lake, and on northward to the county line. In August, 1900, they were progressing with their arrangements for financial aid and for the construction of said road, when they were requested to make a proposition to the defendant to build the desired

railroad facilities to Balsam Lake, whereupon they made
a proposition reciting the various steps taken, the progress
made with the several towns toward obtaining aid, the ex-
penditure of considerable money and labor by the plaintiffs
as promoters, and proposed to transfer the direction and con-
trol of the Balsam Lake Railway, together with all its rights,
by the method of assigning stock or electing officers, at any
time when requested by the defendant,—the existing officers
to resign upon such request; also to transfer all stock then
outstanding; also that certain of them would continue to aid
in obtaining rights of way and municipal aid. In considera-
tion thereof, the defendant corporation was to protect them
against liability on their stock subscriptions; to pay certain
promoters' expenses, amounting to some $6,800, and to agree
that the Balsam Lake Railway or its assigns, or said defend-
ant, would on or before September 1, 1901, build and operate
a standard-gauge railroad from a point in Polk county on
or south of the present main line of the Soo Railway, and
thence northerly, by way of and touching the village of Bal-
sam Lake, to the north line of said county, and connect the
same in said county with the present main line of the de-
fendant's railway; such railway to be built and located on
such line and location as the defendant should thereafter de-
termine.

The complaint alleges that after due consideration the de-
fendant accepted such proposition, and noted its acceptance
in writing thereon as follows: "The above proposition is
hereby accepted and agreed to by the *Minneapolis, St. Paul
& Sault Ste. Marie Railway Company.* Thomas Lowry,
President. Approved. E. Pennington;" that the plaintiffs
performed all of said agreement on their part, turned over
their stock and control of the Balsam Lake Railway, and
have been ready to do all other things in aid of the enter-
prise, as by said contract contemplated; that the defendant,
though having paid the sum specified for promoters' ex-

penses, has wilfully and intentionally neglected to perform, and absolutely refuses to perform, the said agreement on its part to build and construct a railroad to Balsam Lake; that, on the contrary, it has surveyed and adopted a line for a railroad from a point on its main line northeasterly to a point near the north line of Polk county, intersecting the line of survey of the Balsam Lake road, and is engaged with a large force in constructing said line, which runs, at its nearest point, about seven miles away from Balsam Lake; that thereby the territory has been pre-empted, and the plaintiffs prevented from what would otherwise have been possible,—the securing some other company to build railroad connection for Balsam Lake,—and the enterprise of building such road themselves has been rendered unfeasible, because of improbability of the profit which would have resulted had the territory not been invaded by the defendant's new line; that thus trade will be diverted from Balsam Lake, it will be deprived of the advantages of a railroad, to which it was entitled under such contract, and great injury be occasioned to the plaintiffs in their property and business, which is incapable of being either estimated or compensated in money damages, and for which injury flowing from the breach of its contract by the defendant they have no adequate remedy at law; that the defendant is abundantly able financially to construct such road as contracted. They pray a decree requiring the defendant to perform said agreement in all respects, and especially to construct a railroad from the village of Balsam Lake to a convenient point on the main line of said road, and also to the north line of Polk county.

The demurrer was general, and was sustained by the court, by order, November 30, 1901.

*W. F. Bailey,* attorney, and *H. B. Walmsley* of counsel, for the appellants.

*Alfred H. Bright,* for the respondent.

The following opinion was filed March 11, 1902:

DODGE, J.   From among the numerous objections urged by defendant to the maintenance of this action, there is one which seems to us very clearly to justify the conclusion reached by the trial court in the exercise of its judicial discretion,—that a court of equity ought not to undertake to specifically perform the contract set forth in the complaint, notwithstanding it should be found that such contract was entirely valid, upon a full consideration, and that its breach was unjustifiable and must do grievous wrong to the plaintiffs, incapable of adequate remedy in a court of law.   That objection consists in the uncertainty and incompleteness of the contract as to the starting point and location of the proposed road.   By the terms of that agreement, while at a distance of some thirteen miles or more the road must strike the village of Balsam Lake, the point of departure from the east and west line of defendant's railroad, running across the southern part of Polk county, is wholly undetermined. The contract is satisfied by starting the road at any point within a space of about twenty-five miles.   Again, when that point is ascertained, the course of the road may be anywhere, at the will of the defendant, so that it reaches the village. Such uncertainty as this may not defeat the validity of the contract.   It may be that defendant as much breaks the contract when it refuses to exercise its option and to build somewhere as if the location were defined, but the location of the road is not fixed and determined by the contract until, under its provisions, the defendant has exercised its option in that respect.   It cannot be said that there is an agreement to build the road upon any line which the court might select; hence, should any line be adopted by the court, and the road be required to be built thereon, it would, in effect, be making a contract to build the road there, for the parties had made none.   That courts of equity will not enter this field of sup-

plying elements of contract which the parties have not themselves included is, as a general proposition, so well settled as to hardly require more than simple statement. *Blanchard v. D., L. & L. M. R. Co.* 31 Mich. 43, 53; *McKibbin v. Brown,* 14 N. J. Eq. 13; *Schmeling v. Kriesel,* 45 Wis. 325, 328; *Consolidated W. P. Co. v. Nash,* 109 Wis. 490, 506, 85 N. W. 485.

True, it may well be urged that the selection of the starting point and of the course of the proposed railway rested wholly with the defendant, and, if it had performed its duty under the contract, all uncertainty would have been removed therefrom. There is much force to the argument that it ought not to profit by its own wilful defiance of its contractual obligation. Were the question new or unsettled, my personal inclination would tend strongly toward either compelling the defendant to exercise its option, or toward holding that it had forfeited its privilege of election and yielded to the plaintiffs or the court authority to select a line within the limits of the contract. The subject, however, is neither novel nor unsettled. At least as early as Lord ELDON's day it was decided that courts of equity would exercise their discretion against undertaking specific enforcement of incomplete contracts, lacking certainty as to essential terms, although the uncertainty existed by reason of defendant's fault. *Wilks v. Davis,* 3 Mer. 507. That view has been followed with surprising unanimity by courts since. A few only of the cases need be cited: *Morgan v. Milman,* 3 De Gex, M. & G. 24, 34; *Taylor v. Gilbertson,* 2 Drew. 391; *Darbey v. Whitaker,* 4 Drew. 134; *Blanchard v. D., L. & L. M. R. Co.* 31 Mich. 43, 58; *Huff v. Shepard,* 58 Mo. 242, 247; *Domestic T. & T. Co. v. Metropolitan T. & T. Co.* 39 N. J. Eq. 160; *Woodruff v. Woodruff,* 44 N. J. Eq. 349, 16 Atl. 4; *Stanton v. Miller,* 58 N. Y. 192, 200; *Duffield v. Whitlock,* 26 Wend. 55; *Hopkins v. Gilman,* 22 Wis. 476.

At the foundation of that attitude of the courts is the principle that the plaintiff has no absolute right to the aid of a court of equity to enforce specific performance of the contract. His strict right is only to the remedy which common-law courts can give. Courts of equity therefore grant or decline their aid in their discretion, albeit a sound judicial discretion, guided, if not controlled, by precedents which have now pretty well defined its limits. *Williams v. Williams,* 50 Wis. 311, 6 N. W. 814; *Menasha v. W. C. R. Co.* 65 Wis. 502, 27 N. W. 169; *Mulligan v. Albertz,* 103 Wis. 140, 78 N. W. 1093. The field of activity being discretionary, one consideration which has led the courts to decline attempts to enforce contracts when any of the terms depend on the will, discretion, or personal acts of individuals, is their reluctance to proceed where their decree may by any possibility fail of complete efficacy. A very early illustration of this attitude is the famous opera-singer case. *Lumley v. Wagner,* 1 De Gex, M. & G. 604. Another still earlier is *Kemble v. Kean,* 6 Simon, 333. In these the court refused to attempt to decree specific performance of contracts to sing or to act at specified theaters. Obviously a decree of specific performance might in such case fail of its purpose if the defendant resisted to the extent of enduring punishment for contempt. A conveyance of land can be effected by the decree itself, although the defendant refuse to obey it. The performance of certain work, in the like contingency, the court can accomplish through its receiver. But a decree in equity, neither *ex proprio vigore,* nor through the medium of a master or a receiver, can supply the opera singer's music which the contract contemplated. So, here, where the contract calls for a junction point to be fixed by the defendant, of course through its officers, the court cannot ascertain that point if those officers refuse to act. That the court cannot adequately perform the duty of those officers is, of course, apparent.

The considerations involved in the selection of a junction point or branch are multitudinous, complicated, and of grave importance. Those involving questions of mechanics, engineering, and expense hardly compare in importance with others relating to the safety and convenience of the defendant's railway, and therefore of its patrons, the public, which, even in the light of the fullest evidence, must be in large measure beyond the ken of a court. The importance of such an act, and the necessity that it be done in light of the broad general policy of the company, is recognized by statute; for sec. 1831, Stats. 1898, takes from the ordinary executive officers authority to select the place and route for a branch railroad, and requires that it be passed upon by the board of directors. The court cannot, even aided by all possible evidence, make the selection as the defendant company was by the agreement to make it, and, in any attempt so to do, may outrage the contract instead of enforcing it. For this reason, we must decline to disturb the conclusion reached by the trial court in the exercise of his judicial discretion,—not to undertake specific performance of defendant's promise to build a railroad to Balsam Lake.

None of the reasons exist here which have sometimes led courts of equity to give redress by way of damages when they find specific performance beyond their power or duty. The present case is before us at its very inception. Testimony has not been taken. No bar of limitation has run against a proper action at law. The plaintiffs' damages may perhaps yet be affected by their own efforts to supply what defendant contracted to give them. Such damages may, upon the evidence, be of a character incapable of computation, and especially within the proper field of decision by a jury. Further, it must not be overlooked that, as a general rule, legal rights should be enforced in a court of law, where the constitutional right to trial by jury is preserved. Only in exceptional cases, where unnecessary hardship clearly de-

mands, should courts of equity assume that province. *Combs v. Scott*, 76 Wis. 662, 671, 45 N. W. 532; *Cole v. Getzinger*, 96 Wis. 559, 71 N. W. 75; *Blanchard v. D., L. & L. M. R. Co.* 31 Mich. 43, 59.

*By the Court.*—The order appealed from is affirmed.

A motion by the appellants for a rehearing was denied May 13, 1902.