AMERICAN METAL PRODUCTS COMPANY, Appellant, vs.
A. GEO. SCHULTZ COMPANY, Respondent.

*March 3—April 28, 1936.*

292

For the appellant there were briefs by *Otto Dorner* and *William J. Morgan,* both of Milwaukee, and oral argument by *Mr. Morgan.*

For the respondent there was a brief by *Gold & McCann* of Milwaukee, and oral argument by *Walter L. Gold.*

FAIRCHILD, J.   Respondent made the agreement with appellant set out in the statement of facts.   Under the stipulations of that agreement an easement over respondent's land was provided for, and a sidetrack bringing switching facilities to the boundary of appellant's land was to be constructed by respondent.   The appellant is entitled to specific performance of the contract on respondent's part: (1) If the time has arrived for the performance of this covenant; that is, if the clause "at such time as it [respondent] will begin building operations" can fairly be construed to refer to the time of building the sidetrack, and not to constitute a condition that the sidetrack will be built only if the respondent determines to improve its property; (2) if the contract is not too indefinite and uncertain, with respect to location of the sidetrack, to be capable of specific performance; (3) unless the inconvenience and expense to respondent is so great compared to the benefits to be derived by appellant from the

building of the track as to make it inequitable to compel specific performance.

As to time of performance, the trial court was persuaded that following literally the language of the contract, respondent was not bound to furnish the sidetrack until after the commencement of building operations by it upon the land secured through appellant, and that "neither the actual construction nor the preliminary planning and location of the sidetrack could possibly be commenced until the defendant had determined the location of its own proposed new buildings, which the sidetrack was clearly intended mutually to serve, along with the building of the plaintiff." The time for performance of the covenant to build a sidetrack is expressed in the contract as being "at such time as it [respondent] will begin building operations." These words alone do not constitute an expression of a definite time for performance of the agreement to build a sidetrack, but they do express a definite intention to "begin building operations." After a consideration of the contract before us in its entirety, we are of the opinion that it was designed to and does express the intentions of the parties to arrange between themselves a plan under which each would meet what were then considered immediate and existing needs. That portion of the contract which states:

"As a further consideration, the said A. Geo. Schultz Company, party of the second part agrees that it will give the Chicago, Milwaukee & St. Paul Railway Company and Chicago & Northwestern Railway Company an easement for a sidetrack on its own land and over tracts Number One and Two up to the east line thereof, and agrees to construct said track on such easement to the said east line of said property at its own cost and expense, at such time as it will begin building operations and it does hereby grant to said party of the first part, its successors and assigns, the right to connect or extend the said track at the cost and expense of said party of the first part on its own property just east, as well as the

right to use and enjoy the said sidetrack for such switching purposes as may be necessary to meet the needs of said party of the first part,"—

together with such phrases as: "Whereas, The A. Geo. Schultz Company . . . desires this tract of land to enlarge its own holdings to meet its needs, . . ." and the words: "Whereas, The said American Metal Products Company . . . to meet its needs, . . ." too clearly evidence a then present purpose to proceed with the plans referred to, to permit the conclusion that the parties were arranging for contingencies to arise in the distant future. The word "needs," as here used, unaccompanied by any suggestion that future developments were being considered, carries a meaning of preparation to encounter conditions at hand. As an inducement to appellant to give up its option on tract Number One and move to the land described as tract Number Three, respondent was agreeing to pay cash to cover the value of the option, some of the expense incidental to the preparing of tract Number Three, and to provide appellant with a sidetrack and switching facilities. In fact, the switching facilities were practically the inducing cause. Other arrangements made did not more than approximate in value the disadvantage suffered by appellant in the exchange of property. There was considerable of an element of accommodation in the transaction if the value to the appellant of the sidetrack is to be determined entirely by the respondent. There is no doubt of appellant's intention to act immediately, and the considerations offered by respondent in cash and the agreement to build the sidetrack must be weighed with the relation in mind, of things incident to the accomplishment of the things stipulated for, and the expense incurred by appellant by releasing his interest in tract Number One, and building on tract Number Three.

That prompt action was contemplated by both parties is further evidenced by the contents of letters which were writ-

ten on June 14, 1920, and June 16, 1920. In the letter from appellant to respondent, dated June 14, 1920, we find these words: "So in asking you $5,500 there is very little more cost involved and if you grant it, and build the sidetrack as previously agreed, we on our part are ready to close the matter." Later in the same letter there are these words (referring to the building of the sidetrack) : "But not later than one year from date." Those words, upon objection of respondent, were stricken out. The objection to those words was in a letter from respondent to appellant dated June 16, 1920, and after agreeing to pay the $5,500, it wrote: "For the purpose of placing land that you intend to purchase east of the above-mentioned four hundred feet, in the same condition as the property upon which you hold an option. We also agree to allow you the privilege of using our private sidetrack that may be built on our property. We cannot guarantee any set time or place as to when or where this sidetrack will be built, but at the present time indications are that the same will be built approximately as shown on blueprints." After the words "but not later than one year from date" were stricken, the appellant's letter of June 14th, in this respect, then read: "We are not unmindful, however, of the savings effected us by having the privilege of using the sidetrack you propose to install, which we understand, you will do as soon as convenient." With these facts at hand, the only conclusion fairly to be drawn is that the appellant was to have that sidetrack within a reasonable time. "If a reasonable time of performance is contemplated, failure to fix a definite time does not render the contract indefinite." 6 Page, Contracts, § 3283. Citing, *Penney v. Norton,* 202 Ala. 690, 81 So. 666; *Ullsperger v. Meyer,* 217 Ill. 262, 75 N. E. 482; *Dingman v. Hilberry,* 159 Wis. 170, 149 N. W. 761; *Boyington v. Sweeney,* 77 Wis. 55, 45 N. W. 938. In addition to the authorities just cited, the following cases support the proposition that if the respondent had agreed to pay appellant

$5,500 "at such time as it will begin building operations," such an agreement would fix the time of payment within a reasonable time. *Valley Fruit Co. v. Swash,* 134 Wash. 697, 236 Pac. 273; *Nunez v. Dautel,* 19 Wall. 560; *Noland v. Bull,* 24 Or. 479, 33 Pac. 983; *Voight v. Voight,* 96 Neb. 465, 148 N. W. 83; *Greenstreet v. Cheatum,* 99 Kan. 290, 161 Pac. 596; *Randall v. Johnson,* 59 Miss. 317; *Button v. Higgins,* 5 Colo. App. 167, 38 Pac. 390. Respondent, in treating with these cases, urges a distinction between them and the case at bar on the ground that in this case the building of the sidetrack is so dependent upon the type of respondent's buildings that the commencement of the buildings is a condition precedent. This distinction is not controlling, for here the promise is to give appellant something of value, to wit, the use of switching facilities. At the time of the making of the agreement this thing of value had persuasive influence with appellant, and was a factor in inducing appellant to enter in the contract. The respondent undertook to do a particular act, the performance of which depended entirely upon respondent, and the wording of the contract implies a promise on respondent's part to perform that act so as to give the appellant the benefit thereof within a reasonable time. The fact that respondent purchased other buildings and found it convenient to postpone building on the property acquired through the appellant's giving up its option and building on a different tract at greater expense, does not change the terms of the contract or warrant ignoring the rights acquired by the appellant under the stipulation. With this interpretation of the agreement, it would seem to follow that the time which has elapsed since the contract was entered into considerably exceeds a reasonable time.

As to the lack of definiteness of location of the sidetrack, which is urged by respondent as a reason for denying specific performance, it appears that the termini of the sidetrack were fixed sufficiently for the purposes of the parties in treat-

ing with each other. The track was to connect the newly-acquired property of appellant on its western boundary with the belt line, and was to extend over respondent's newly-acquired property from its western to its eastern line where it would be of use to appellant.

That the solution of this case is not without difficulty appears from the consideration given it by the learned trial judge, and by the apparent conflict of authorities.

Respondent cites, among others, the cases of *Park v. Minneapolis, St. P. & S. S. M. R. Co.* 114 Wis. 347, 89 N. W. 532, and *Auer v. Mathews,* 129 Wis. 143, 108 N. W. 45, as sustaining the result reached in the court below. But the facts involved in those cases differ decidedly from those presented by the case at bar. The existence of other remedies or a situation resulting in the imposition on one party of a burden so out of proportion to the benefit to be secured by granting this particular relief as to be inequitable, or where the elements conditioning the matter are so uncertain as to compel the making of a contract by the court, would, of course, be ground for refusal to exercise the power, but the difficulties to be encountered because of a lack of available means for enforcing a decree of specific performance of a contract do not always warrant the denial of such a decree. In the *Park Case, supra,* the effort was made to compel the building to a village of a railway, the village being some ten or fifteen miles from the main line, and where the starting point of such railroad might be any point within a space of twenty-five miles, and where the interest of the public was involved. The court there said:

"The considerations involved in the selection of a junction point or branch are multitudinous, complicated, and of grave importance. Those involving questions of mechanics, engineering, and expense hardly compare in importance with others relating to the safety and convenience of the defendant's railway, and therefore of its patrons, the public, which,

even in the light of the fullest evidence, must be in large measure beyond the ken of a court. The importance of such an act, and the necessity that it be done in light of the broad general policy of the company, is recognized by statute; for sec. 1831, Stats. 1898, takes from the ordinary executive officers authority to select the place and route for a branch railroad, and requires that it be passed upon by the board of directors. The court cannot, even aided by all possible evidence, make the selection as the defendant company was by the agreement to make it, and, in any attempt so to do, may outrage the contract instead of enforcing it. For this reason, we must decline to disturb the conclusion reached by the trial court in the exercise of his judicial discretion,—not to undertake specific performance of defendant's promise to build a railroad to Balsam Lake."

In the *Auer Case, supra,* it was held that the contract there was indefinite and Mr. Justice WINSLOW, for the court, said:

"In order to specifically enforce an instrument it must be definite and certain in its terms, or capable of being made definite by the aid of legal presumptions or by evidence of contemporaneous facts and circumstances which is properly admissible." (Citing cases.)

In the *Auer Case,* the contract was thought to be uncertain as to the description of the land to which Mathews could furnish title. Out of some fifty-seven parcels of land owned by him in two towns, he was to convey forty-seven, but there was no provision as to which forty-seven of the fifty-seven were to be conveyed. The case at bar is not embarrassed with the uncertainties contended with in the cases cited. The contract might have been more definite, but as said in 6 Page, Contracts, § 3283:

"Even where specific performance is sought, the ordinary rules of construction apply, and if the meaning of the contract can be ascertained with the ordinary rules of construction, specific performance will not be refused, although the contract does not set forth all its terms in such detail as to

dispense with the necessity of invoking such ordinary principles of construction."

This rule was applied in *Inglis v. Fohey,* 136 Wis. 28, 33, 116 N. W. 857, where it was stated:

"If, by aid of evidence showing the situation and surroundings of the parties at the time, and their subsequent acts, if any, construing the terms of the writing, the court can with reasonable certainty determine the meaning intended by the parties, the court will not allow the contract to fall, but will construe it in the light of such evidence and enforce its terms as so construed, if there be no other fatal objections to it."

At the time the agreement was made, and when the respondent was inducing the appellant to change its position so as to give the respondent a desired advantage, it was understood that the exact course of the track would be affected or influenced by the location and shape of respondent's buildings, but the thing that appellant contracted for, and that which the respondent agreed to give the appellant, was a track affording switching facilities. It is that accommodation that the appellant seeks and to which he is entitled unless equitable considerations intervene to prevent the granting of a decree of specific performance.

The trial court, having reached the conclusion that the time for performance was within the control of the respondent, did not consider the issue of whether the construction of the sidetrack would be of such small value to appellant as to warrant denial of relief, or other questions which might control the decision on equitable grounds. Since we find ourselves in disagreement with the trial court on the construction of the contract as to the requisites of definiteness as to time and description, it becomes necessary to remand the record for a new trial upon issues not determined. Consideration, of course, will be given the question of damages, if any, including the greater cost of handling freight shipments as bearing upon the equity of specific performance. It will also

be material, in case specific performance is denied, as bearing upon the loss sustained from and after the expiration of a reasonable time within which it may be held that the respondent ought to have performed.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.